# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

ARRIN FARRAR, et al.,

    Plaintiffs,

v.            CIVIL ACTION NO. 2:18-cv-00461

THE CESSNA AIRCRAFT COMPANY, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Textron Aviation, Inc.'s ("Textron") and Defendant McFarlane Aviation, Inc.'s ("McFarlane") motions to dismiss for lack of personal jurisdiction.[1] (ECF Nos. 6, 9.) For the reasons discussed herein, the Court **GRANTS** the motions. (ECF Nos. 6, 9.)

### I. BACKGROUND

This case arises out of the March 16, 2016 crash of a Cessna 172 aircraft at Yeager Airport in Charleston, West Virginia, in which Plaintiff Arrin Farrar ("Arrin Farrar"), a student pilot, was severely injured. (*See* ECF No. 1 at 13–14, ¶¶ 99–102.) The aircraft was manufactured by Cessna Aircraft Company ("Cessna"), which later merged with Textron and ceased to exist as a separate

---

[1] Also pending before the Court are the Parties' Joint Motion to Seal Jurisdictional Supplemental and Supporting Exhibits, (ECF No. 61), and Textron's Motion to Seal Supplemental Reply and Exhibits or, in the Alternative, to Submit Redacted Versions to the Court, (ECF No. 63), pursuant to the Parties' Protective Order signed by Magistrate Judge Tinsley, (ECF No. 56). For good cause shown, the Court **GRANTS** the motions, (ECF Nos. 61, 63), and **ORDERS** that the motions and their attached exhibits, including the supplemental response and reply, remain under seal.

corporate entity, and the aircraft's seat rails were manufactured by McFarlane. (*See* ECF Nos. 20 at 1–2, 63-1 at 12 n.4.) Skylane Aviation, LLC ("Skylane") owned the aircraft and registered it in West Virginia. (ECF No. 61-2 at 2.) Defendant Andrew Swepston ("Swepston") performed repetitive maintenance and inspections on the aircraft. (*See* ECF No. 1 at 24, ¶ 145.)

The crash that injured Arrin Farrar occurred when the right-side seat, in which the flight instructor was sitting slipped from its intended position and caused the instructor to pull the yoke of the plane backwards. (*See id.* at 12–13, ¶¶ 90–97.) This caused the plane to pitch up and crash. (*See id.* ¶¶ 93–97.) As a result of the crash, Arrin Farrar suffered from numerous fractures throughout his face and extremities. (*See id.* at 13–14, ¶¶ 100–101.)

On March 20, 2018, Plaintiffs, Arrin Farrar and his spouse Erin Farrar, filed the present action in this Court invoking the Court's diversity jurisdiction as Plaintiffs are residents of Maine, (ECF No. 1 at 2, ¶¶ 4–5), Textron and McFarlane are Kansas corporations with their principal places of business in Kansas, (*id.* at 2–3, ¶¶ 7, 9), and Swepston is a resident of Ohio. (*Id.* at 3, ¶ 10.) Plaintiffs allege the following five counts against Textron and McFarlane: strict liability (Count I); negligence (Count II); breach of warranties (Count III); fraud (Count IV); reckless, outrageous, and willful and wanton conduct (Count V). (*See id.* at 14–24, ¶¶ 103–43.) Plaintiffs further allege claims for negligence (Count VI) and breach of express and implied warranties (Count VII) against Swepston. (*See id.* at 24–28, ¶¶ 144–63.)

On July 9, 2018 and July 13, 2018 respectively, Textron and McFarlane filed the present motions to dismiss for lack of personal jurisdiction. (ECF Nos. 6, 9.) Plaintiffs timely responded, (ECF Nos. 23, 25), and Textron and McFarlane timely replied. (ECF Nos. 30, 32.) On August 6, 2018, Plaintiffs filed a motion to conduct jurisdictional discovery. (ECF No. 19.) The Court granted Plaintiffs' motion on November 9, 2018 and ordered that Textron's and McFarlane's motions

to dismiss be held in abeyance for a 60-day period of jurisdictional discovery to end on January 21, 2019. (*See* ECF No. 36 at 8.) That 60-day period was extended to February 15, 2019.

Plaintiffs filed their supplemental response on March 1, 2019. (*See* ECF No. 61-2.) McFarlane and Textron filed their supplemental replies on March 7, 2019 and March 8, 2019 respectively. (*See* ECF Nos. 62, 63-1.) As such, Textron's and McFarlane's motions to dismiss are fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(2), a court may dismiss claims for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "When a non-resident defendant files a motion pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure challenging the court's power to exercise personal jurisdiction, 'the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence.'" *Felman Prod. v. Bannai*, 517 F.Supp.2d 824, 827–28 (S.D. W. Va. 2007) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). However, "[w]here, as here, the district court addresses the question of personal jurisdiction on the basis of motion papers, supporting legal memoranda, and the allegations in the complaint, the plaintiff bears the burden of making a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009). "In considering whether the plaintiff has met this burden, the district court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014) (citation and quotation marks omitted).

## III. DISCUSSION

A federal court sitting in diversity, "has personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016) (quoting *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993)). Here, because the West Virginia long-arm statute "'is coextensive with the full reach of due process,' the Court need not conduct 'the normal two-step formula.'" *Knisely v. Nat'l Better Living Ass'n*, No. 3:14-cv-15, 2015 WL 1868819, at *8 (N.D. W. Va. Apr. 23, 2015) (quoting *In re Celotex Corp.*, 124 F.3d 619, 627 (4th Cir. 1997)). Thus, the Court's statutory inquiry merges with the constitutional inquiry and the Court need only consider whether the exercise of personal jurisdiction in the present case would be consistent with the Due Process Clause. *See id.* (quoting *In re Celotex Corp.*, 124 F.3d at 628).

"A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interests in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A defendant's contacts may establish either general or specific jurisdiction. *See Perdue Foods*, 814 F.3d at 189.

General, or all purpose, jurisdiction over a nonresident corporate defendant exists if the defendant's contacts with the forum state are so "continuous and systemic" as to render the defendant "at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). Generally, a corporation is at home only where it is incorporated and where it has its principal place of business. *See id.* at 137. While the Supreme Court has not foreclosed the possibility that a corporation could be at home in a state where it is neither incorporated nor has its principal place of business, it has

made it clear that "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 139 n.20.

Specific personal jurisdiction over a corporate defendant exists if the suit "arises out of or relates to the defendant's contacts with the forum" and defendant has "'purposefully established minimum contacts in the forum State' such 'that [it] should reasonably anticipate being haled into court there.'" *Daimler*, 571 U.S. at 127; *see also Perdue Foods*, 814 F.3d at 189 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). The Fourth Circuit has directed its courts to look at the following to determine whether specific personal jurisdiction exists:

> (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arose out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable.

*Universal Leather*, 773 F.3d at 559. "The 'touchstone' of the specific jurisdiction analysis is whether the defendant 'engaged in some activity purposefully directed toward the forum state.'" *Sarver v. Johnson & Johnson*, No. 2:14-cv-19968, 2016 WL 482994, at *3 (S.D. W. Va. Feb. 5, 2016) (quoting *Celotex*, 124 F.3d at 628).

  A. *Textron*

Textron argues that the Court does not have general jurisdiction over it because Textron is not a West Virginia incorporation, nor does it have its principal place of business in or have systematic contacts with West Virginia. (*See* ECF No. 7 at 4–8.) Textron further argues that the Court does not have specific jurisdiction over Textron because Plaintiffs' claims do not arise out of or relate to Textron's purposeful contacts with West Virginia. (*See id.* at 8–12.)

5

Plaintiffs appear to argue that the Court has both general and specific jurisdiction over Textron due to Textron's allegedly pervasive business activity in West Virginia. (*See* ECF No. 26 at 10–12.) Thus, the Court will analyze whether it has jurisdiction over Textron under both theories.

    1.   General Jurisdiction

As stated above, general jurisdiction requires that a nonresident corporate defendant's contacts with the forum state be so "continuous and systematic" that the defendant is "fairly regarded as at home" in the forum state regardless of whether those contacts give rise or relate to the underlying cause of action. *See Daimler*, 571 U.S. at 139; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). A corporation is generally at home where it is incorporated or has its principal place of business and it is the "exceptional case'" when a corporation is considered "at home" outside of those paradigm bases. *See Daimler*, 571 U.S. at 139 n.19. The Supreme Court pointed to *Perkins v. Banguet Consol. Mining Co.*, 342 U.S. 437 (1952), as the textbook "exceptional case." *See Daimler*, 571 U.S. at 139 n.19. In *Perkins*, the president and general manager of the nonresident company performed the following duties in the forum state: maintained an office from which he conducted company affairs and kept company files, "used and maintained . . . two active bank accounts carrying substantial balances of company funds," paid employees, including two who worked with him in the forum state, held directors' meetings, and supervised company policy. 342 U.S. at 447–48. The Supreme Court held that the forum state's court could exercise general jurisdiction over the defendant without offending due process because the defendant's activities in the forum state were akin to those of a corporate headquarters so that the defendant essentially rendered the forum state its "principal, if temporary, place of business." *See Daimler*, 571 U.S. at 130 (discussing *Perkins*).

Here, even taking the facts in the light most favorable to Plaintiffs, Textron's corporate activity in West Virginia falls short of the kind of corporate activity that the Supreme Court has found sufficient to confer general jurisdiction. It is undisputed that Textron is a Kansas corporation with its principal place of business in Kansas. (*See* ECF No. 1 at 2, ¶ 7.) Plaintiffs allege that Textron conducts the following activities in West Virginia: Textron is required to continually provide airworthiness information to the owners and operators of Cessna aircraft in West Virginia; Textron continuously advertises in and solicits business from West Virginia; Textron makes millions of dollars in revenue in West Virginia; Textron's representatives routinely visit customers in West Virginia; and Textron generates income from the State of West Virginia as part of an agreement to support the aircraft operated by the state. (*See* ECF Nos. 26 at 12, 61-2 at 6–8.) However, none of these activities are sufficient to establish that Textron is "at home" in West Virginia.

For example, in *Kraft v. Johnson & Johnson*, this District found that there was no general jurisdiction over a foreign corporate defendant even where the defendant conducted the following business activity in the forum state: generated large sales, specifically more sales than in the state it was incorporated in, hired and trained employees based in the forum state, marketed products, maintained company files and equipment, and maintained websites directed to all states, including the forum state. *See* 97 F. Supp. 3d 846, 853–54 (S.D. W. Va. 2015). It would be unreasonable for this Court to find general jurisdiction here, when Textron has less contact in the forum state than the defendant in *Kraft*. Further the Supreme Court has stated that "[m]ere purchase, even if occurring at regular intervals are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to the purchases." *See Helicopteros*, 466 U.S. at 418; *see also Kraft*, 97 F. Supp. 3d at 853 ("[T]he argument that the defendants market and

7

sell large amounts of products in the forum is unavailing for the purposes of general jurisdiction." (citing *Daimler*, 571 U.S. at 139 n. 20)).

Accordingly, construing the facts in the light most favorable to Plaintiffs, Plaintiffs have not made a prima facie case that the Court has general jurisdiction over Textron.

### 2. Specific Jurisdiction

As stated above, "[t]o assert specific jurisdiction, the court must find that the claims against the defendant result from the defendant's contacts with the forum, not from activities unrelated of the forum. If a plaintiff successfully demonstrates prongs one and two, the court must assess the third prong." *HSBC Bank USA, Nat. Ass'n v. Resh*, No. 3:12-cv-00668, 2015 WL 4772524, at *3 (S.D. W. Va. Aug. 12, 2015) (citing *Consulting Eng'rs*, 561 F.3d at 278–79). Thus, the Court must assess whether Textron has purposefully availed itself of doing business in West Virginia before turning to the other two prongs.

When determining whether a corporation has purposefully availed itself of doing business in the forum state, the Fourth Circuit considers the following factors:

> (1) "whether the defendant maintains offices or agents in the forum state;" (2) "whether the defendant owns property in the forum state;" (3) "whether the defendant reached into the forum state to solicit or initiate business;" (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state;" (5) "whether the parties contractually agreed that the law of the forum state would govern disputes;" (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;" (7) "the nature, quality and extent of the parties' communications about the business being transacted;" and (8) "whether the performance of contractual duties was to occur within the forum."

*See Knisley*, 2015 WL 1868819, at *9 (quoting *Consulting Eng'rs*, 561 F.3d at 278).

Here, it is undisputed that Textron maintained no offices, facilities, employees, mailing addresses, telephone listings, bank accounts, or real or personal property in West Virginia.

8

Plaintiffs' allegations in support of their argument that Textron has purposefully availed itself of the privilege of doing business in West Virginia fall almost entirely under the third and fourth factors: "whether the defendant reached into the forum state to solicit or initiate business" and "whether the defendant deliberately engaged in significant or long-term business activities in the forum state". Plaintiffs allege that Textron has the following business contacts in West Virginia: Textron solicits sales from West Virginia, including sales of parts for installation in the accident aircraft; Textron's sales force designed mailings offering test flights to prospective customers that were to be distributed in a region which includes West Virginia; Textron sent twenty-seven direct mailings to Skylane in West Virginia; Textron's representatives routinely visit customers in West Virginia; Textron makes millions of dollars in revenue in West Virginia; Textron has "several networks of salespersons in place who have West Virginia as part of their region;" and Textron generates income from the State of West Virginia as part of an agreement to support the aircraft operated by the state. (*See* ECF No. 61-2 at 4–8.)

These activities fall short of establishing that Textron purposefully availed itself of West Virginia. First, Textron does not specifically target West Virginia for sales and no sales representatives are assigned solely to West Virginia. (*See* ECF Nos. 61-2, 63-1.) Instead, West Virginia is part of a larger sales region that includes six other states. (*See* ECF No. 61-9 at 5 (Test Flight Solicitation).) *See also Universal Leather*, 773 F.3d at 562 (citing *Fed. Ins. Co. v. Lake Shore Inc.*, 886 F.2d 654, 659 (4th Cir. 1989) (finding that the defendant did not purposefully avail itself of the privilege of conducting business in the forum state, in part, because the defendants did not "directly advertise or solicit customers" in the forum state)). Moreover, there is no evidence that the

9

in-person customer service visits to West Virginia were initiated by Textron.[2]  (*See* ECF No. 61-4 at 10–12 (Howell Dep.).)  Similarly, Textron's mailings to Skylane are not a result of Textron's targeting of West Virginia as these mailings are required by Federal Aviation Regulations.  *See* 14 C.F.R. § 21.99(b); *see also Gerber Prods. Co. v. Vilsack*, No. 16-cv-01696, 2016 WL 4734357, at *4 n.3 (D.C. Cir. Sept. 9, 2016) (declining to accept the plaintiff's argument that defendant's ongoing compliance with federal law weighed towards a finding of personal jurisdiction); *Michigan Coal of Radioactive Material Users v. Griepentrog*, 954 F.2d 1174, 1177 (6th Cir. 1992) ("The district court misconstrued the defendants' compliance with federal law as purposeful actions.").

Additionally, from 2014 to 2016, Textron's revenue from sales in West Virginia made up less than 1% of Textron's national revenue.  (*See* ECF No. 63-1 at 12.)  *Compare* the present case *with Bassett v. Strickland's Auto & Truck Repairs, Inc.*, No. 1:17-cv-590, 2018 WL 3542868, at *5 (M.D.N.C. July 23, 2018) (finding that the defendant's sales to the forum state were significant enough to weigh toward a finding that the defendant had purposefully availed itself of doing business in the forum state where 62% of the defendant's invoices were billed to customers in the forum state); *see also Reed v. Beverly Hills Porsche*, 307 F. Supp. 3d 494, 503 (W.D. Va. 2018) (considering the percentage of total sales to forum state purchasers in analyzing defendant's significant and/or long-term business activities within forum state).

Further, the cases in which the Fourth Circuit has found that a defendant's decision to solicit business and visit customers in the forum state weighed towards a finding of purposeful availment involved solicitations and visits directly related to the business relationship between the parties.  In

---

[2] Plaintiffs also cite a visit by Textron employees to a trade show in West Virginia in support of their argument that Textron purposefully availed itself of West Virginia.  (*See* ECF No. 61-2 at 7.)  However, courts within this Circuit have rejected the attendance at trade shows as weighing toward a finding of purposeful availment.  *See, e.g.*, *Hutton v. Hydra-Tech, Inc.*, 213 F. Supp. 3d 746, 754–55 (M.D.N.C. 2016) (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 888–89 (2011)).

contrast, here, Plaintiffs' allegations regarding Textron's business solicitations are more generalized and only tangentially relate to Textron's relationship with Skylane and even less to Textron's relationship with Plaintiffs. (*See* ECF No. 61-2 at 4–8.) *Compare* the present case *with Universal Leather*, 773 F.3d at 562–63 (4th Cir. 2014) (finding that the plaintiff had satisfied the purposeful availment prong where it alleged that the defendant made the first contact with the plaintiff and regularly visited the forum state to meet and solicit business from the plaintiff and reiterating the importance of a "defendant's solicitations and in-person contact regarding the business relationship in the forum state" when determining whether the defendant purposefully availed itself of the forum state) *and CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 (4th Cir. 2009) (affirming a finding that the defendant had purposefully availed itself of the forum state where the defendant initiated contact with the plaintiff in the forum state which sparked ongoing business transactions by which the defendant repeatedly reached into the forum state to transact business).

The only allegation that potentially qualifies as long-term business activity is Textron's contract with the State of West Virginia to support aircraft operated by the state. (*See* ECF No. 61-2 at 8.) In *Burger King v. Rudzewicz*, the Supreme Court held that a single contract can provide a sufficient basis for personal jurisdiction if the contract creates ongoing obligations that strengthens the defendant's contacts with the forum state. *See* 471 U.S. 462; *see also Perdue Foods*, 814 F.3d at 191; *Pathfinder Software, LLC v. Core Cashless, LLC*, 127 F. Supp. 3d 531, 540 (M.D.N.C. 2015) ("A contract with an in-state entity does not automatically establish minimum contacts with the forum state." (citing *Burger King*, 471 U.S. at 478)). However, Textron's contract with the State of West Virginia does not necessarily strengthen Textron's contact with West Virginia as Plaintiffs have not alleged that such support contemplated in the contract has occurred in West Virginia or that the contract provides that it will. (*See* ECF Nos. 61-2, 61-4 (stating that all of Textron's maintenance

11

centers are located outside of West Virginia).) *See also Pathfinder Software*, 127 F. Supp. 3d at 541 (finding that the defendants' contractual relationship with a forum state entity was not sufficient to establish purposeful availment where the plaintiff did not allege that the activity contemplated in the contract would take place in the forum state). Further, this contract is entirely unrelated to the claims in the present case. *See Carroll v. Vinnell Arabia, LLC*, No. 1:15-cv-815, 2015 WL 5579917, at *7 (E.D. Va. Sept. 22, 2015) ("[T]he fact that a defendant has contracted with a non-party who is located in a certain state does not automatically confer personal jurisdiction over the defendant in that state under a theory of specific jurisdiction, especially when that one contract has nothing to do with the allegations supporting the claim at issue in the litigation.").

Thus, viewing the above business activities as a whole, Textron's business contacts, as alleged by Plaintiffs, are insufficient to satisfy the purposeful availment prong. Moreover, even if the Court did find that the above contacts sufficiently established that Textron purposefully availed itself of West Virginia, Plaintiffs' claims against Textron—that Textron designed, manufactured, and sold the allegedly faulty accident aircraft—do not arise out of these contacts. *See Consulting Eng'rs*, 561 F.3d at 278–79.

It is undisputed that the subject aircraft was sold to its first owner in Ohio in 1979. (*See* ECF No. 63-1 at 2.) Additionally, the only above activities that relate to the accident aircraft are Textron's direct mailings to Skylane and selling of parts to Skylane for installation in the accident aircraft. However, as stated above, Textron's legal obligation to search the Federal Aviation Administration's database to mail service literature to aircraft owners, including Skylane, cannot serve as a basis to find personal jurisdiction over Textron. *See Allegheny Energy Supply*, 2010 WL 3220355, at *5. Further, the parts Textron sold to Skylane were directly sent to third-party maintenance entities in Ohio and Canada and were paid for by those same entities. (*See* ECF No. 61-4 at 65–68 (Howell

12

Dep.).) Thus, none of Textron's contacts that are even remotely relevant to Plaintiffs' claims occurred in West Virginia.

In sum, viewing the allegations in the light most favorable to Plaintiffs, Plaintiffs fail to make a prima facie showing that the Court has specific personal jurisdiction over Textron. As the Court **FINDS** that Plaintiffs have not met their burden of showing that the Court has either general or specific jurisdiction over Textron, the Court **GRANTS** Textron's motion to dismiss.

B. *McFarlane*

In its motion dismiss, McFarlane argues that the Court does not have general jurisdiction over it because McFarlane does not have a physical presence in West Virginia, nor does it have pervasive business activity in West Virginia such that it could be considered "at home" here. (*See* ECF No. 62 at 2–7.) Regarding specific jurisdiction, McFarlane argues that Plaintiffs' claims do not arise from, or relate to, McFarlane's contacts with West Virginia. (*See id.* at 8.) In their first response to McFarlane's motion, Plaintiffs appeared to argue that the Court has both general and specific jurisdiction over McFarlane. (*See* ECF No. 24 at 7–8.) However, in their supplemental response, Plaintiffs' appear to focus their argument on the Court having specific jurisdiction over McFarlane. (*See* ECF No. 61-2 at 8–11.) Nevertheless, the Court will address both forms of jurisdiction as it is unclear whether Plaintiffs have abandoned their argument for general jurisdiction.

1. General Jurisdiction

As with Textron, Plaintiffs' allegations here regarding McFarlane's business activity in West Virginia fall short of the kind of corporate activity that the Supreme Court has found sufficient to confer general jurisdiction. Plaintiffs allege that McFarlane has the following significant business activities in West Virginia: McFarlane has ongoing, growing sales to West Virginia; McFarlane has at least eighty-nine customers in West Virginia, many of whom receive direct mailings and catalogs

13

from McFarlane; and McFarlane has an ongoing business relationship with Skylane Aviation, a West Virginia entity. (*See* ECF No. 61-2 at 8–9.)

As stated above, a corporate defendant's contacts with the forum state must be so "continuous and systematic" that the defendant is "fairly regarded as at home" in that state regardless of whether those contacts are related to the underlying suit. *See supra* Part III.A.1. Thus, it is an exceptional case where a defendant is at home in a state other than where it is incorporated or has its principal place of business. *See supra* Part III.A.1.

Similar to Textron, McFarlane's above alleged business contacts with West Virginia are not so continuous and systematic that McFarlane can fairly be found to be regarded "at home" in West Virginia. First, it is undisputed that McFarlane is incorporated in Kansas and has its principal place of business in Kansas. (*See* ECF No. 1 at 3, ¶ 9.) Additionally, none of the above alleged business activities are of such a nature that the Supreme Court has found sufficient to justify the exercise of general jurisdiction over a nonresident corporate defendant. *See supra* Part III.A.1. Plaintiffs do not allege that McFarlane has any physical presence in West Virginia, either via real property or agents, nor do Plaintiffs allege that McFarlane's sales representatives or agents have ever visited West Virginia. Plaintiffs simply allege that McFarlane has made continuous sales to West Virginia. (*See* ECF No. 61-2 at 8–9.) As stated above, "[m]ere purchase, even if occurring at regular intervals are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to the purchases." *See Helicopteros*, 466 U.S. at 418. Further, these sales make up only 0.112% of McFarlane's total sales. (*See* ECF No. 62 at 4.)

Thus, even construing the facts in the light most favorable to Plaintiffs, McFarlane's contacts are insufficient to establish general jurisdiction. *See ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 624 (4th Cir. 1997) (finding that the defendant's contacts with the forum state were insufficient

14

for general jurisdiction where the defendant "maintain[ed] no sales representatives or other agents there, and the business attributable to [the fourm state's] customers constitute[d] less than one-tenth of one percent of its nationwide sales volume"); *see also Harber v. Haupt*, No. 2:10-cv-01273, 2011 WL 552240, at *3 (S.D. W. Va. Feb. 9, 2011) (citing *ESAB Group* and stating that, "the Fourth Circuit rejected the notion that a court could exercise general jurisdiction when the defendant's only activities in the forum consisted of sending salespersons into the state to promote products, solicit sales, and engage in advertising").

Accordingly, construing the facts in the light most favorable to Plaintiffs, Plaintiffs have not made a prima facie case that the Court has general jurisdiction over McFarlane.

2. Specific Jurisdiction

As stated above, courts within the Fourth Circuit consider a non-exhaustive list of factors to determine whether a nonresident corporate defendant has purposefully availed itself of the privilege of conducting business in West Virginia, such as whether the defendant has a physical presence in the forum state, solicits business from the forum state, or has engaged in significant or long-term business activities in the forum state. *See Knisley*, 2015 WL 1868819, at *9.

McFarlane does not have a physical presence in West Virginia, either through real estate or employees; it does not have a sales team or sales region that is dedicated to West Virginia, nor does it make in-person, business visits to West Virginia residents. (*See* ECF No. 62 at 8.) Further, there is no evidence that McFarlane targeted West Virginia for business purposes. Plaintiffs, however, assert that McFarlane's continuous sales and support to the accident aircraft and Skylane and its eighty-nine customers in West Virginia are sufficient to establish that McFarlane purposefully availed itself of West Virginia. (*See* ECF No. 61-2 at 9–11.)

15

The nature, quality, and quantity of McFarlane's sales and support to customers in West Virginia are too minimal and attenuated to establish that McFarlane purposefully availed itself of West Virginia. From 2011 to 2017, McFarlane's sales to West Virginia have consistently been less than 0.2% of McFarlane's total sales and, for at least two years, McFarlane did not make any sales to West Virginia. (*See* ECF No. 62 at 5–6.) *See also Eagle Coffee Co. v. Eagle Coffee Int'l, Inc.*, No. L–09–2585, 2010 WL 481201, at *4 (D. Md. Feb. 4, 2010) (finding that the minimal amount of sales over a twenty-five-year period, although all occurring within a two-year period, did not weigh towards a finding of purposeful availment) (citing *Burger King*, 471 U.S. at 475–76). Further, all of McFarlane's sales of parts to Skylane were initiated by Skylane and the parts were shipped to Ohio. (*See* ECF No. 61-11 at 9 (McFarlane Dep.).) *See also CP #1109, LLC v. Cont'l Motors, Inc.*, No. 517-cv-03036, 2018 WL 1309732, at *3 (S.D. W. Va. Mar. 13, 2018) (finding that defendants did not purposefully avail themselves of doing business in the forum state in part because defendants did not solicit business in the forum state, but were contacted by the plaintiffs to determine what work needed to be completed on the aircraft).

As Plaintiffs' allegations do not sufficiently establish that McFarlane purposefully availed itself of the privilege of doing business in West Virginia, it is unnecessary for the Court to address whether the alleged contacts are related to Plaintiffs' claims against McFarlane. As such, Plaintiffs fail to make a prima facie showing that the Court has specific jurisdiction over McFarlane.

Accordingly, as Plaintiffs have not made a prima facie showing that the Court has general or specific personal jurisdiction over McFarlane, the Court **GRANTS** McFarlane's motion to dismiss.

## IV. CONCLUSION

For the reasons discussed more fully above the Court **GRANTS** Textron's and McFarlane's motions to dismiss for lack of personal jurisdiction. (ECF Nos. 6, 9.) The Court further **DIRECTS** the clerk to remove The Cessna Aircraft Company, Textron, and McFarlane as Defendants to this action. Thus, the only remaining Defendant in this action is Andrew Swepston. The Court **ORDERS** Plaintiffs to submit evidence on or before **April 26, 2019**, that Swepston has been properly served in this action.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 27, 2019

_____
THOMAS E. JOHNSTON, CHIEF JUDGE